IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LIBERTY MUTUAL FIRE INSURANCE
COMPANY as subrogee of CELLU
TISSUE HAPPAUGE, LLC, FACTORY
MUTUAL INSURANCE COMPANY as
subrogee of CELLU TISSUE
HOLDINGS, INC., and CELLU
TISSUE HOLDINGS, INC.,

       Plaintiffs,

v.

THE BOLDT COMPANY f/d/b/a
OSCAR J. BOLDT CONSTRUCTION
COMPANY,

       Defendant.

CIVIL ACTION NO.
1:11-cv-00762-JEC

## ORDER & OPINION

This case is before the Court on defendant's motion for summary judgment [55]. Defendant seeks summary judgment on plaintiff's[1] negligence claim and, if summary judgment is unavailable on that count, a ruling limiting the amount of damages plaintiff may obtain. For the reasons set out below, the motion for summary judgment on plaintiff's negligence claim is **DENIED**, and the motion for summary judgment as to damages is **DENIED without prejudice**.

---

[1] There are actually three-named plaintiffs in this case: Cellu and two insurance companies that are its subrogees. For simplicity's sake, the Court will use the singular "plaintiff" throughout this Order.

**BACKGROUND**

Plaintiff Cellu Tissue ("Cellu"), a Georgia corporation, makes paper towels.  Paper towels are sold in rolls, with a roll containing hundreds of separate but connected towels wrapped around a cylindrical cardboard tube.  The process by which the paper towels are placed around this tube and prepared for shipping requires a device known in the industry as a "wrapper," which is a complex machine that may cost upwards of the high six figures in new condition.  In the present case, plaintiff shipped one of its wrappers, but the wrapper was seriously damaged en route.  Plaintiff claims that defendant Boldt Company, which was responsible for loading the wrapper securely onto the trailer that transported it, did not do its job properly and is therefore responsible for all of plaintiff's damages: consequential and direct.

The facts are as follows.  In the spring of 2009, Cellu needed to transport one of its wrappers from Wisconsin to Georgia to meet a paper towel order from Wal Mart.  Before transporting a wrapper, its parts--some of which weigh several tons[2]--must be dissembled, after which they are loaded into a trailer or trailers.  Here, two trailers were used to carry the disassembled wrapper.  To survive the journey

---

[2]  (*See* Jim Sheppard Dep. Tr. [59-3] at 17 (cargo in this case weighed six to seven tons).)

2

intact, the individual parts of the wrapper must be secured to ensure that they do not shift during travel.

To handle the task of loading and securing the wrapper parts in the trailers, Cellu hired defendant Boldt, a Wisconsin construction company, which was paid approximately $2,100 for its efforts. (Def.'s Mot. for Summ. J. [55] at Ex. 1 (order form dated 4/27/2009 instructing Boldt to "move and load and _secure properly_ [the wrapper] in two trailers" and listing $2,100.00 as the price.)(emphasis added).)

Thereafter, defendant Boldt dispatched employees Jim Sheppard and Chad Kelly to the Wisconsin facility where the trailers were waiting to be loaded.[3] The two employees used a forklift to place the wrapper inside the trailer, after which they arranged the parts in a way that they apparently thought to be appropriate, with the entire process taking approximately three hours.  (Jim Sheppard Dep. Tr. [59-3] at 8, 11-12, 20.)  Specifically, Sheppard and Kelly installed what they referred to as "chocking,"[4] which consisted of building wooden braces around the various parts of the wrapper, to keep the

---

[3]  Sheppard had worked at Boldt for 31 years and loaded several such trailers, including ones for Cellu, whereas Kelly was a more recent hire.  (Jim Sheppard Dep. Tr. [59-3] at 3-5; Chad Kelly Dep. Tr. [59-2] at 3.)

[4]  WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines "chocking" as "a wedge or block (as of wood or metal) for steadying a body (as a cask or boat) and holding it motionless...."

individual wrapper parts in place during the journey. (*Id.* at 15-16.)  The two employees next nailed the wooden braces to the floor of the trailer, the idea being that the bracing would prevent the wrapper parts from shifting within the trailer. (*Id.*)[5]  With one exception, the Boldt employees did not have problems loading the wrapper.[6]

After Sheppard and Kelly finished their job, the driver of the truck containing the wrapper in question--Richard Turner, an employee who was unaffiliated with either Boldt or Cellu-inspected the cargo and it appeared to him that the wrapper was adequately secured.[7]  Turner then began the drive to deliver the wrapper.  Thirty miles from the final destination in Thomaston, Georgia, however, a car pulled out in front of Turner's truck on a two-lane highway.  To avoid an accident, Turner slammed on his brakes in a "dramatic,

---

[5]  "Q: Ya'll lowered the profile of the wrapper, the wrapper machine itself, so that it would be more secure to the bottom of the trailer?  A: Right.  We'd have full surface area of the wrapper on the wood floor of the truck." (*Id.* at 16.)

[6]  Sheppard and Kelly expressed concern about securing a thin structure called an "electrical cabinet," which the Boldt employees feared was too tall to be secured by chocking.  (*Id.* at 9-10.)  Instead of using chocking, they used straps to tie the cabinet against the sidewall of the interior of the trailer.  There has been no indication in the briefing that  the electrical cabinet was damaged.

[7]  (Richard Turner Dep. Tr. [60-5] at 131-32 ("Q: Okay.  And when you looked at this load, did it appear that a professional job had been done to load and secure this cargo in the trailer?  A:  Yes, sir, that was my assumption, yes, sir.").)

emergency braking maneuver." (Def.'s Statement of Undisputed Facts [55-15] at ¶ 7.)

After reaching the Thomaston destination, Cellu and the driver, Richard Turner, discovered that a part of the wrapper had become dislodged and had damaged not only the trailer, but also the part, itself, leaving the wrapper inoperable.  After closer inspection, employees from Cellu determined that the nails which had been used to keep the chocking secured on the floor of the trailer had been ripped out, permitting the wrapper part to roam about the trailer.

Defendant believes that the wrapper part became dislodged as a result of driver Turner's emergency braking maneuver when the car pulled out in front of him. (*Id.* at ¶ 8.)  Plaintiff believes[8] that the part became dislodged as a result of defendant's negligent job securing the wrapper in the trailer. (Pls.' Resp. to Def.'s Mot. for Summ. J. [60] at 4.)  As driver Turner did not inspect the cargo during his journey,[9] including after the braking maneuver, neither

---

[8]  The parties' "beliefs" notwithstanding, it is not clear that either party has made the effort to actually offer any evidence in support of their respective theories.

[9]  Turner did not inspect the cargo until his arrival in Thomaston.  His failure to make periodic inspections of his cargo during the trip apparently violated a regulation found in the Federal Motor Carrier Safety that requires such steps by the motor carrier to examine the cargo. (Roland Brown Dep. Tr. [55-7] at 28.)  Turner has settled separately with plaintiff for his role in the accident.

party definitively knows whether the wrapper came loose immediately after that incident or at some other time.

Faced with a large order from Wal Mart that it had to fill, but without a functioning wrapper, plaintiff Cellu had a dilemma. It could either purchase a used wrapper similar to the one that broke, which defendant Boldt claims would have cost approximately $270,000, or it could have paid $300,000 for the wrapper to be fixed. (*Id.* and Def.'s Br. in Support of its Mot. for Summ. J. [55-1] at 5.)[10] Cellu also had a more costly third option, which was to purchase a new wrapper for approximately $670,000. (Pls.' Resp. to Def.'s Mot. for Summ. J. [60] at 17.) Cellu deemed the first two less expensive options to be unacceptable, as it could not readily find a used wrapper[11] and repairing the damaged wrapper would have taken at least three months: a time period that was not feasible given its obligation to fill the Wal Mart order. As Cellu estimated that it would lose $244,000 for each month it was not producing paper towels, even without considering the Wal Mart order, and as Cellu did not

---

[10] Plaintiff disputes the $270,000 figure, but concedes the $300,000 figure. (Pls.' Resp. to Def.'s Mot. for Summ. J. [60] at 5-6.)

[11] Defendant argues that plaintiff has offered no evidentiary support for its argument that Cellu could not find a used wrapper. Both parties' citations to the record have been very spotty. Although the Court has not, on its own, trudged through all of the depositions to find pertinent evidence, defendant appears to be correct.

want to displease a large customer such as Wal Mart by having to delay its order for several months (*id.* at 11), it chose the third option: the purchase of a new wrapper.

Plaintiff now brings this action against defendant Boldt, claiming that defendant was negligent in its efforts to secure the wrapper and therefore was at fault for the wrapper's breaking. Specifically, plaintiff faults defendant's method for securing the wrapper, arguing that by only using chocking, defendant left space among the various pieces of the wrapper within the trailer. (*Id.* at 14-15.) Plaintiff asserts that defendant should not only have built bracing around the cargo, but should also have placed the parts onto individual "pallets."[12] (*Id.* at 9, 17.) According to plaintiff, who cites its expert witness, the pallets should have filled the "footprint" of the trailer, extending all the way to the front, back, and sides of the trailer, which would have prevented cargo from shifting inside the trailer and which, plaintiff says, would have avoided the sort of accident that took place here. (*Id.*)

Plaintiff also argues that the trailer carrying the wrapper that was damaged was secured only by chocking, whereas the other trailer, which arrived safely at its destination, was secured by tightly-

---

[12] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY defines a "pallet" as, *inter alia*, "a portable platform of wood, metal, or other material designed for handling by a forklift truck or crane and used for storage or movement of materials and packages in warehouses, factories, or transport vehicles."

7

packed pallets.  (Chad Kelley Dep. Tr. [60-4] at 19-20.)  According to plaintiff, this demonstrates defendant's knowledge of an alternate and safer way to pack the wrapper, which method would have avoided the damage that occurred had defendant followed it in packing both trailers.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. [60] at 7-8.)

Defendant avers that both trailers were packed only by chocking (Def.'s Statement of Undisputed Facts [55-15] at ¶ 3.)  The Court, however, must take the facts in the light most favorable to the non-movant, the plaintiff.  Accordingly, for purposes of this motion, it assumes that the trailers were packed differently, with one being packed with the pallet method that plaintiff says constitutes the appropriate reasonable standard of care.

## DISCUSSION

### I.   STANDARD OF REVIEW

Summary judgment is not properly viewed as a device that the trial court may, in its discretion, implement in lieu of a trial on the merits.  Instead, Rule 56 of the Federal Rules of Civil Procedure *mandates* the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of *every* element essential to that party's case on which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In such a situation, there can be no genuine issue as to any material fact, as a complete failure of proof concerning an

AO 72A
(Rev.8/82)

essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Id.* at 322-23.

The movant bears the initial responsibility of asserting the basis for his motion. *Id.* at 323; *Apcoa, Inc. v. Fidelity Nat'l Bank*, 906 F.2d 610, 611 (11th Cir. 1990). The movant is not required to negate his opponent's claim, however. The movant may discharge his burden by merely "'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. After the movant has carried his burden, the nonmoving party is then required to "go beyond the pleadings" and present competent evidence[13] designating "'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e). While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, *Samples v. City of Atlanta*, 846 F.2d 1328, 1330 (11th Cir. 1988), "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

_____

[13] The nonmoving party may meet its burden through affidavit and deposition testimony, answers to interrogatories, and the like. *Celotex*, 477 U.S. at 324.

A fact is material when it is identified as such by the controlling substantive law. *Id.* at 248. An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Id.* at 249-50. The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson,* 477 U.S. at 249-50. Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of *every* element material to that party's case so as to create a genuine issue for trial.

## II.   NEGLIGENCE CLAIM

In a negligence action, the plaintiff must show the following:

> (1) [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.

*Freeman v. Eichholz*, 308 Ga. App. 18, 20 (2011).

10

To succeed on its summary judgment motion, a defendant must show that the undisputed evidence indicates that the plaintiff has not met one or more elements. Conversely, to survive a summary judgment motion, the plaintiff attempts to show that it has either met the element, as a matter of law, or that there is a genuine factual dispute as to the element.

Whether the defendant owes the plaintiff a duty of care is a question of law. *DaimlerChrysler Motors Co., LLC v. Clemente*, 294 Ga. App. 38, 47 (2008). "A duty may arise in professional relationships independent of a contract...[O]ne who undertakes to perform a task must perform it in a non-negligent manner." *Arthur Pew Const. Co., Inc. v. First Nat. Bank of Atlanta*, 827 F.2d 1488, 1492 (11th Cir. 1987)(discussing Georgia law)(internal quotations omitted).

Defendant presumably does not disagree that it owed a duty of care to plaintiff Cellu when it agreed to pack and secure the latter's valuable wrapper, and that negligence in that endeavor would be actionable.[14] What defendant appears to be arguing, however, is that while packing the wrapper with pallets might have been a

---

[14] As noted *infra*, the parties are inconsistent in their briefing as to whether this action is a breach of contract claim, or instead is a negligence claim under tort law. Plaintiff's Complaint asserts only one claim, however: a negligence claim.

AO 72A
(Rev.8/82)

superior method to secure the wrapper, packing them with chocking was not unreasonable.

In making this argument, defendant primarily relies on the fact that there is no specific federal regulation that says a carrier should use pallets over chocking in this kind of situation. Defendant cites no authority for the proposition that the absence of a regulation specifically outlawing a particular packing method means that the particular packing method is appropriate and meets the reasonable standard of care. The absence of any case authority for defendant's position is no surprise, as one would not expect federal regulations to identify each of the thousands of possible shipping scenarios that a motor carrier faces, or to provide detailed guidance on how the shipped contents in each scenario should be packed.[15]

If there were a specific federal regulation that would have prohibited the use of chocking here, then defendant would be facing a likely successful argument that it was negligent *per se*. The absence of any regulation at all, however, does not necessarily mean that defendant's conduct was reasonable under the circumstances. *See Sinclair Disposal Serv., Inc. v. Ochoa*, 265 Ga. App. 172, 173 (2004)

---

[15]   Of course, defendant's argument begs the question whether federal motor carrier regulations have any pertinence to the duty of care owed by a company such as defendant Boldt, which was carrying nothing, but instead was packing and securing the load.

AO 72A
(Rev.8/82)

(conduct that adheres to statutory standards is "not...by definition, nonnegligent....[T]he issue of liability turns on the use of reasonable care under existing condition[,] rather than on compliance with governmental regulations.")(internal quotations omitted); *Hall Cnty. Sch. Dist. v. C. Robert Beals & Assocs., Inc.*, 231 Ga. App. 492, 497 (1998)("Where a statute provides a general rule of conduct,...the violation thereof is negligence as a matter of law, or negligence per se, whereas in the absence of such specific statute the jury is left to determine whether such conduct constitutes negligence.")(internal quotations omitted).

In deciding whether plaintiff has failed to establish that defendant violated a reasonable standard of care in its packing of the wrapper, which lapse led to the wrapper part becoming dislodged during the journey, the Court concludes that, taking the facts in the light most favorable to the plaintiff, the latter has created a jury question on this point. Plaintiff's expert witness has offered an opinion that defendant should have filled the "footprint" of the trailer, extending all the way to the front, back, and sides of the trailer, which would have prevented cargo from shifting inside the trailer; according to the expert, the use of pallets would have accomplished this goal. (Report of Opinions of Ronald B. Brown [60-6] at Ex. A at 5.) Plaintiff's expert further opined that had the wrapper been properly secured with pallets, the rapid deceleration

13

would not have dislodged the wrapper part. (*Id.* at 41.) In fact, plaintiff's expert witness has testified that "had the machinery been loaded and secured in the trailer as outlined in this report, the damage would not have occurred while in transit under the same or like circumstances." (*Id.* at 6.) (*See also* James Roffers Dep. Tr. [60-1] at 65-66, in which the latter, an employee of the wrapper's manufacturer indicates that custom-made skids, or pallets, are used to transport the large machinery.)

The testimony of Boldt employee, Chad Kelly, that the second undamaged trailer had, in fact, been packed with the use of pallets, suggests defendant's awareness of this method of packing and its feasibility in this situation. Given the testimony of these witnesses, defendant has failed to demonstrate the absence of negligence, as a matter of law. *See Arthur Pew Const. Co., Inc.*, 827 F.2d at 1492 (summary judgment on negligence claim inappropriate, where there was a question of fact as to whether defendant met duty to plaintiff); *Matt v. Days Inns of Am., Inc.*, 212 Ga. App. 792, 796 (1994)("Issues of negligence...are for the jury, except in plain and palpable cases in which reasonable minds cannot differ.").

Accordingly, defendant's motion for summary judgment as to the negligence claim is DENIED.

14

## II.   <u>DAMAGES</u>

### A.   <u>Parties' Arguments</u>

Although plaintiff Cellu could have replaced or repaired the damaged wrapper for between $270,000-$300,000, plaintiff instead chose to purchase a new wrapper, which cost approximately $670,000. Plaintiff says it did so, because repairing the existing wrapper or finding a used wrapper would have taken too much time, given its outstanding order with Wal Mart and the loss of productivity that it would suffer during the wait.   Plaintiff now seeks damages in the amount of the $670,000 purchase price for the new wrapper.   Plaintiff also seeks "special damages," in the amount of $192,164, for other business costs that it incurred as a result of having to deal with the damaged wrapper.[16]

Defendant seeks summary judgment as to plaintiff's claim for any damages that exceed the fair market value of the wrapper before it was damaged, which defendant asserts to be $270,000.   In other words, defendant argues that Cellu should not receive a windfall by obtaining damages in the amount of the cost of a new wrapper ($670,000).   Defendant also contends that Cellu should not receive any "consequential" or "special" damages for ancillary costs that it incurred as a result of the damage to the transported wrapper.

---

[16]   These expenses included costs incurred for a change in packaging required by a customer; unused paper that was returned; and excess freight.   (Def.'s Mot. for Summ. J. [55-1] at 12.)

15

In making its very cursory argument on this point, defendant does not actually set out, in any clear way, the standard by which one should determine the amount of damages in a situation such as the present one. As to plaintiff's claim for damages equaling the cost of a new wrapper, defendant cites to a Georgia tort case dealing with property damages suffered by a plaintiff in an automobile accident, which case apparently holds that damages in such a case are either the repair cost to the vehicle or the difference in value of the vehicle, before and after the accident. (Def.'s Mot. for Summ. J. (55-1) at 9.)

Defendant also cites to an unpublished opinion from the district court of South Carolina in which the plaintiff sued its carrier for damaged merchandise during transport. *Lowcountry Block, LLC v. Bennett Motor Express, LLC,* Civil Action No. 9:08-2181 (D.S.C. Nov.14, 2011)(*id.* at [55-13].) Plaintiff sued under the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. § 11706(a) and (c). (*Id.* at 7.) The latter provides for liability of a rail carrier "for the actual loss or injury to the property it transports under a bill of lading," absent a limitation of liability. (*Id.*)

It is true that there are factual analogies between that case and this case, and it is true that the district court judge in the South Carolina case rejected the plaintiff's argument that it should receive damages in the amount of the cost of new equipment, but

16

305e267bcb576198

instead ruled that plaintiff could only receive damages for the cost of repairs.  This South Carolina case, however, involved a federal statute, not Georgia law concerning the damages that may be properly awarded under either a negligence or contract theory.  So, it has limited pertinence to the present case.

As to plaintiff's claim for special or consequential damages for Cellu's miscellaneous expenses, defendant does espouse a standard under Georgia contract law.  Specifically, citing to a case that cites O.C.G.A. § 13-6-2, defendant argues that regarding special damages arising from a breach of contract, damages are recoverable only when they arise naturally from the breach of contract and are reasonably foreseeable.  (Def.'s Mot. for Summ. J. [55-1] at 11.) The statute, itself, provides:

> Damages recoverable for a breach of contract are such as arise naturally and according to the usual course of things from such breach an such as the parties contemplated, when the contract was made, as the probable result of its breach.

O.C.G.A. § 13-6-2.

While the above appears to be a workable principle, defendant does not apply that principle to the facts of this case, other than to say, in a conclusory fashion and without any citation to any evidence, that "[t]hese special damages were not contemplated by the parties at the time of the contract...." (Def.'s Mot. for Summ. J. [55-1] at 12.)

17

AO 72A
(Rev.8/82)

In its own response to defendant's argument, plaintiff provides arguments that are equally conclusory.  Plaintiff first notes that it had a duty to mitigate its damages and that buying a new wrapper mitigated the damages that would presumably result from plaintiff's inability to operate during the two-three months that a repair would take.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. [60] at 17-18.)  This argument, however, begs the central question here, which is whether such business operation damages are recoverable in the first place. If such ancillary damages are not recoverable, there would obviously be no duty to mitigate them.

As to whether it should have been foreseeable to defendant that damage to the wrapper would create a cascade of business-related problems for Cellu, plaintiff offers a series of common sense arguments why such a consequence should have been foreseeable to defendant.  (Pl.'s Resp. to Def.'s Mot. for Summ. J. [60] at 20.) Yet, each of these arguments is based on a factual predicate for which plaintiff provides no evidentiary support.

Turning then to defendant's reply brief, defendant pivots to argue that plaintiff has conflated damages recoverable in torts and those recoverable in contract, and must elect which theory it is pursuing.  (Def.'s Reply Br. In Supp. of its Mot. for Summ. J. [61] at 5.)  As to any claim for damages under tort law, defendant notes the absence of evidentiary support for plaintiff's conclusory

18

statements concerning the interruption of its business that would have occurred had it not purchased a new wrapper. Nowhere, however, does defendant ever tell the Court what it believes the standard would be for recovering damages under a torts theory. (*Id.* at 6-8.)

As to a contract theory, defendant argues that plaintiff's claim for special damages is without merit as, again, there has been no showing that these damages were foreseeable, as Georgia law would require. (*Id.* at 8.)

B.   <u>Need For Further Briefing On Damages Question</u>

Given the sparseness of the briefing on the question and the fact that there will be time before this case is scheduled for trial for the parties to better brief the matter, the Court **DENIES WITHOUT PREJUDICE** defendant's motion for summary judgment as to damages.

That said, were the Court forced to rule at this point, it would find that plaintiff has not yet satisfied its burden of demonstrating its entitlement to damages commensurate with the cost of a new wrapper or to its consequential business damages. First, to the extent that plaintiff seeks damages under a tort theory, such damages would likely be fixed as either the cost of repair or the fair of market value the property before the accident. *See generally John Thurmond & Assocs., Inc. v. Kennedy*, 284 Ga. 469, 473-74 (2008)(where property owner sued contractor for negligently damaging owner's property, damages determined by diminution in fair market value of

19

property or cost of repairs); *Sykes v. Sin*, 229 Ga. App. 155, 155-56 (1997)(in negligence case where damage to property alleged, damages may be reasonable value of repairs, or difference in fair market value before and after injury).

To the extent that plaintiff seeks damages under a breach of contract theory--as the parties did have a contract and as defendant allegedly breached the contract through its negligence--plaintiff will presumably be limited to either the cost of repair or the fair market value of the wrapper,[17] unless it can meet the standard set out in § 13-6-2.  That is, plaintiff will likely not be entitled to damages in the amount of the costs of a new wrapper or damages for attendant, miscellaneous business expenses, absent some showing, with evidentiary support, that such damages would have been contemplated by the parties when they entered into their agreement, as the probable result of a breach, pursuant to O.C.G.A. § 13-6-2.  *See also* O.C.G.A. § 13-6-8 ("Remote or consequential damages are not recoverable unless they can be traced solely to the breach of the contract...and are independent of any collateral enterprise entered into in contemplation of the contract."

The upcoming schedule will be as follows.  The Court will give the parties time to mediate this case, if they think this would be

---

[17] Plaintiff will need to enlighten the Court as to which of those it contends would be the measure of damages, hopefully with some citation to legal authority.

20

productive.  The parties should advise the Court by **Friday, March 1, 2013**, whether they would like to attempt mediation.  If so, the parties will be given a reasonable period of time to accomplish this.

If the parties do not wish to mediate the case, the plaintiff will be required to file a trial brief on the damages issue, only, by **April 1, 2013**.  This brief shall set out precisely whether plaintiff seeks damages in torts or contract, and why, as well as the standard applicable to each.  Citation of any analogous Georgia[18] case authority would, of course, be helpful.  This brief shall then set out why plaintiff believes it should recover under the applicable standard.  In explaining the above, plaintiff shall cite to the existing record or indicate the evidence/testimony it expects to adduce at trial to meet the standard.

Defendant's trial brief on damages shall be due on **May 1, 2013.** It shall respond to plaintiff's contentions and shall follow the format set out above.  Like plaintiff's brief, defendant's brief should aim for precision in terms of its articulation of the applicable standard and corresponding Georgia law, as well as the evidence in the record in support of defendant's argument and any

---

[18] Given the briefing thus far, the Court assumes that the parties agree that Georgia law applies.  If this is not so, the parties should indicate which state's law applies and why, again with a citation to legal authority, not conclusory arguments.

evidence/testimony that defendant anticipates it would introduce at trial.

The parties shall then file their consolidated pretrial order by **Monday, June 3, 2013**.

<u>**CONCLUSION**</u>

For the above reasons, the Court concludes that defendant's motion for summary judgment [55] on plaintiff's negligence claim should be **DENIED**, and defendant's motion for summary judgment as to damages should be **DENIED WITHOUT PREJUDICE**.

SO ORDERED, this <u>20th</u> day of FEBRUARY, 2013.

<u>/s/ Julie E. Carnes</u>
JULIE E. CARNES
CHIEF UNITED STATES DISTRICT JUDGE

22